Good morning, your honors. I please the court. My name is Jay Trickett. I'm appearing on behalf of the appellant, Karen Logan. I'd like to reserve five minutes for rebuttal. This morning, I'd like to give some context in the implied private right of action cases. Ever since Touche Ross, the series of cases finding an implied right of action or considering the question have focused primarily on the Court v. Ash Factor No. 2, intent. They've implied that the other three factors, if they're valuable at all, are simply indicia of intent. Factor No. 2 under court, which Touche Ross focuses on, looks to three specific indicia. Rights creating language, context, and legislative history. And the notable thing about all of the cases that the Supreme Court has ruled on in implied private right of action cases since Court v. Ash, but particularly since the term in which Touche Ross was decided, which also decided Transamerica in canon, is that in those cases where the Court found a private right of action, it found rights creating language in the statute itself. And in each of those cases where the Court did not find a private right of action, the Court did not find any rights creating language and instead found that the statute focused on the regulated parties rather than the class of persons for whom the statute was intended to benefit. And dropping that plumb line and having cases in two categories, it becomes clear that the PTFA falls in the rights creating category very clearly. First, the statute itself is entitled Protecting Tenants at Foreclosure Act of 2009, and that's not just a heading. That's within the statute. Second... Well, what do you mean it's not just a heading? Within the statute itself, for example, in a case where headings are typically construed to not have any binding effect or meaning, whereas in the statute here, Congress specifically included language in the statute itself that said, this title may be cited as the Protecting Tenants at Foreclosure Act of 2009. But they said that with every law. That's what they say with every law. I mean, I appreciate your argument, but it does seem that the title, we'd be on pretty thin ice to do much based on the title. Now, maybe, do you have any authority that suggests that there's something special about the way this title is incorporated that would give us a different way to go than we would normally go? I wouldn't ask the Court to make any decision in this case based on the title alone. No, and I don't... The title, all I'm arguing is that the title, given that it was Congress, not the Congressional Recording Office, that determined the title. It was Congress itself that enacted the title, but that is an addition of its intent, particularly in the context of the language of the statute itself, the substantive language, which is what I am asking the Court to make its decision based on. I would hope, though, because Congress picks titles to appeal to 13-year-old mentalities. Have you looked at some of the names of statutes lately? I have. It's insane. I mean, it's ridiculous. Let's get off the title thing. I don't think that's going to get you very far. Thank you, Your Honor. I would like to get off the title because I'd like to focus on the substantive language. And the substantive language of the statute, it uses the word rights. It says that, to summarize the first paragraph, successors of interest to foreclosed properties shall assume such interest subject to the rights of any bona fide tenant. And then the statute goes on... But why aren't those rights under state law, though? I mean, wasn't Congress here just trying to make certain that people who were in a foreclosure situation would be able to remain in their homes for a time, contemplate some regulatory action, set up a scheme for the regulatory agencies to do that? How do you read an implied right of action for damages out of the language that you're just citing? First of all, there's two distinct issues here, whether or not there's an implied private right of action for damages and whether there's an implied private right of action for discretionary, injunctive... Okay. Either way, then. And what the Supreme Court has said is that when there's rights-creating language, we're looking at a statute that clearly there's no express cause of action created. There would be no point to this doctrine if it wasn't intended to deal with statutes that did not express causes of action. So what this statute does is it creates a right, and you ask the question, well, didn't Congress just intend for this to be applied by the states? Not necessarily by the states, but rather it was a matter of state law. In other words, I don't think you're contending that landlord-tenant law is a federal issue, generally speaking. I'm not, Your Honor. Just as contract law and tort law is generally not a matter of federal law, traditionally speaking. But in Transamerica, for example, the Supreme Court, what they found is they found an implied private right of action to void contracts. And the language in Transamerica even says, while Congress may have contemplated that voiding contracts with investment advisors would be merely asserted as a defense, simply allowing it to be asserted as a defense under state law and contract actions would not be sufficient to ensure that the rights that are conferred by the statute to the parties that were intended to be benefited are fully granted and are fully enforceable. Because if you look at the HUD notice in the Federal Register, they basically said what we're really trying to do is make sure there's notice. And so that's why, if that's really the purpose, it's not to give a cause of action, but it's just to make sure that they're not summarily kicked out of their homes for a very legitimate purpose. Why isn't the use of this federal statute as a defense in a detainer or other action sufficient? Well, let me, I can give you examples. Okay. But I want to address what you said about HUD first, which is that the HUD notice specifically says we're not enacting any kind of regulations here because the statute uses the term self-enforcing. So in terms of HUD and what they were communicating to all the Fannie Mae and Freddie Mac banks and other institutions to which they delivered their notice, what HUD understood is that this statute would be self-enforcing. It would not be enforced by any kind of regulatory agency. But with respect to your question about being asserted as a defense, just like in trans-America, the rights that are provided in the Protecting Tenants at Foreclosure Act, which exceeds state law. And I want to make that clear. This exceeds state law, or it did at the time, in every state in one way or another. So this is federal law that preempts and exceeds what was passed by state legislatures. Right. And right there, actually, okay, let's stop there, and then we'll go into little chunks. That's actually the remedy, isn't it? In other words, you can take this statute and you can use it in your state law action so that the states uniformly are using this federal law, which preempts other contrary law. Isn't that the, quote, remedy, as opposed to a right to file an additional action? Why isn't that sufficient? Because under the unlawful detainer statutes of most states, two reasons. First, ordinarily you cannot bring cross-claims or counter-claims in unlawful detainer actions. So any kind of relief in terms of seeking an injunction, requiring the foreclosing bank or successor in interest to comply with the statute, it's not available in an unlawful detainer action. You can't bring a defense in an unlawful detainer action? All you can do is say that, and state courts have been very hit or miss in whether or not they're actually enforcing this, but that is a question for the state courts. But all you can do is bring a defense to an unlawful detainer action that's already brought, but banks don't have to bring unlawful detainer actions. That's not the only way you can evict someone. So, for example, under Section 702A1B, if you are a tenant, you're a bona fide tenant, but you don't have a written lease, or your lease is terminable at will, if they lock you out, or if they shut off your utilities in a state unlike California where that's against the law, or do any kinds of other kinds of nonjudicial eviction processes, and there are many, tenants would have no protection under the statute, despite the fact that the statute says they have a right to stay for 90 days, and they have a right to stay under the same terms under which they've stayed thus far. Why couldn't they be protected by asserting this statute? In order to get somebody out, you, of course, have to execute an appropriate judgment of eviction, even if it's just a tenancy at will, whatever. And that's a legal action. You can then assert this defense, and you get the protection of the act, do you not? Without any implied action being involved. No, well, I guess what I'm talking about is something different, which are things that there are ways to evict, or there are ways to constructively evict a tenant without bringing a lawful detainer action. No, but how do you get them out? Well, let's take the tenancy at will. You don't have a written lease, but you still got to get the person out of there, so they send you a notice, you have a tenancy at will, you're out of there yesterday. People don't leave. Then you need a sheriff's writ, right, generally in most states? As Judge Smith's saying, you need some kind of quasi-judicial official action in order to actually get the person and have them taken out. In other words, in order to enforce the right, you've got to proceed, depending on what it's called a state, you've got to proceed with some kind of a writ. Unless you use vigilante justice and dump their stuff out on the sidewalk. Well, which does happen. Which you're allowed to do, actually. It definitely happens. They dump their stuff out on the sidewalk. Not so much in California. Not so much in California. But not in California. But in California, the Nativi case upon which the U.S. Bank relies, it actually happened in that case. They locked them out. It was not brought as an unlawful detainer action. Instead, the tenants left and they came home and they found themselves locked out with their stuff. There would be a remedy under state law, would there not? Not if they did not have a lease. So you're saying if you're a squatter. No, if you have a tenancy at will or if you are a tenant. That's a lease under California law. It's not a written lease, but it's a lease. Right, but what you would not have is the protections of the PTFA. What you would have is the protections that the state law already provided, but the PTFA goes beyond those protections. And it says, unlike any statute in America, in the individual states, that upon foreclosure, even if ordinarily it's a 30-day notice requirement, upon foreclosure you have a 90-day right to stay. But, of course, what we're dealing with here, this is a unique situation here. What we're saying is people are losing the houses that they have rented because they didn't pay. They are foreclosed by virtue of the deed of trust or the mortgage. The lender steps in. The lender wants to get the property vacant so they can sell it or whatever. That's what this statute is designed to do, is to keep the tenants in there for a little period of time. And as Judge McKeon and I have both been saying under any state law that I'm aware of, and I used to be a real property lawyer, you've got to have something. If somebody says, I'm not leaving. You used to be a real lawyer? A real estate lawyer. Well, I used to be a real lawyer, too. But you have to have some kind of a legal action to get somebody out if they don't leave voluntarily. And that happens. And in that situation, you could assert the statute without having to have an implied right of action, could you not? Yes, Your Honor. However, there are scenarios, some of which I've discussed, in which you would not be able to assert the PTFA. And that's what's important here because there are rights here and under the Supreme Court and California jurisprudence, and I would encourage the court to look at Helfer, which is good law and has not been even criticized in any circuit. Can you just list for me, what are the circumstances that you believe you need an implied right of action? I gather you concede that for the normal run-of-the-mill situation where there is a written lease and the bank forecloses, or whoever the lender is, they take over the property, the tenant can assert as a defense to any action to evict them from the property the PTFA, right? So what are the circumstances that you're claiming that the statute doesn't cover for which you are seeking an implied right of action? Number one, any situation in which the bank entertains any kind of self-help or non-judicial eviction proceedings. That's even if there's a remedy under state law? Yes. Like there would be in California? There would be a remedy, but the rights that are in the PTFA, I'm running out of time here, exceed state law. And number two, any situation where there is no lease or there's a lease terminable at will. But that's a lease. Right. But again, the rights of the PTFA exceed the terms of the lease. Okay. I know we're over time, but since we're asking questions, we get to do that. A tendency at will in California is a lease. If somebody's in there on an oral lease, on a month-to-month, whatever, that's still a lease. So you're protected under that situation. So I'm not sure where you get on that one. Maybe some states that's not true. But it seems to me what you're saying is it's only in the self-help situation that you're looking for relief. I mean, I know you'd like it broader, but you're saying that you clearly need it there. And what I'm saying is at least in California, there are some very strong penalties that would apply for, like, turning off power, throwing people out in the street and so on with that process of law. Why isn't that sufficient, taking California as an example, to give people the protections that the PTFA doesn't in your view? It's not sufficient under the IPRA jurisprudence, because the PTFA creates rights that Congress intended to be enforceable, and they are different than those rights. So there are remedies under state law, but Congress created its own set of rights. And it said, these are the minimum rights that you get. And so in any situation where state law does not provide the same rights the PTFA does, there needs to be a private right of action. I have another question, and I'm going to give you some time for rebuttal, so maybe the luxury of being the only case today. But in the 28J letter, the bank raised an issue about whether your client was actually a bona fide tenant because of this being married to the borrower and the homeowner, et cetera. Would you respond to that? Yes, Your Honor. I have a limited ability to respond to that. I was brought on actually after the answering brief was already filed by U.S. banks. So we came in very late. What I do know from the record is that, first of all, the only case that I found that addresses the issue of presumption regarding a bona fide tenant found in New York that you should presume that a tenant is a bona fide tenant under the PTFA. And second, there have not been any factual findings or anything to address that issue in terms of the record at district court. So if this court does agree with me that there is a private right of action and remains it back to district court, then that's an issue that the district court is going to have to address. And the reason I asked is that if it were clear on the record, and I think they cite to the answering brief so it may not really be in the record, then sometimes it may not even be necessary for us to decide certain other issues. But I understand that you were brought in late. So I'm going to give you some rebuttal time, but I'd like to hear from the bank. All right. Thank you. Good morning. May it please the court. Tom Dupree on behalf of the appellate. The district court held, consistent with the conclusions of the 46 other district court decisions to address this issue, that there is no implied private right of action under the PTFA. That judgment was correct and should be affirmed. The text, structure, and legislative history of the statute all compel the conclusion that Congress certainly did not intend to federalize landlord-tenant law, eviction disputes, and many other types of cases that historically and traditionally have been adjudicated by the state courts in our country. The Supreme Court, in its most recent implied private right of action decisions, has cautioned the federal courts to go slow in recognizing potential new implied private rights of action. And I think this case in particular is one where the Supreme Court's injunction should be heeded, because as the panel noted, this is an area that historically, since time immemorial, has been adjudicated. How far back is that? It really goes back, I think, to... I mean, time immemorial. I would say probably early to mid-20th century is when you first start seeing this. Wow. And it seems to me, at least decades, fair to say. They didn't have that in England then. So that's probably true, although we actually haven't gone back and looked at the English common law. For a minute I thought you were going to talk about infestments or something like that. No. This is an area, obviously, that has been committed to state law, and I think that one very telling indicator that the way Congress understood what it was doing, that is to say that it was creating a defense that could be asserted in these state court eviction proceedings, is inherent in the concept of notice. That is to say, the right that the plaintiff is asserting is this right to have been given 90-day notice before the eviction. Your opponent suggests that there are certain types of evictions, and he refers to one in particular where, in this case, the bank would get the property back in the foreclosure, goes there and throws them out on the street, and that you need a private right of action to do that. What would be the bank's response? What remedy do they have there? Well, my understanding is the same as your Honor's, I think, which is to say that they have adequate remedies under state law. For example, wrongful eviction. There are many other state law causes of action that you could bring in this circumstance that you don't need a federal remedy for money damages to vindicate this right. I would also point out that it is abundantly clear from the legislative history that Congress was not looking at the so-called vigilante landlords. That's not what was on its radar screen at the time that it legislated. Quite the contrary. It was conscious of eviction proceedings in the ordinary course, and it wanted to ensure this adequate notice provision. Under the PTFA, at least as construed by the regulations of the Department of Housing and Urban Development, would the, what shall I say, tenancy at will receive the notice? That's a good question, Your Honor. I believe the statute does provide fairly broadly for persons who have lease interest. I know that in circumstances where someone is staying there but absent a lease, that there are certain rights that arguably attach. In this case, of course, we're actually, plaintiff has pled that she was operating under a lease or had one. We're very dubious about that just as we're extremely skeptical that she, in fact, is a bona fide tenant. The other point I wanted to make to Your Honor in response to Your Honor's questioning about what circumstances that the implied private right of action would be necessary is that the narrow hypotheticals that my colleague offered are not this case. So even if he is correct that these are the types of narrow situations where it applies, they don't have standing to pursue those. Those wouldn't apply to this case. Well, but I don't think that has really been the construct in which we determine whether there's a private right of action. In other words, if we were to slice and dice this statute and say, well, not for all of this, but maybe for this and this, I don't know any Supreme Court case that would let us approach it that way. Maybe you do. Oh, no. I think Your Honor's correct. And I'm certainly not suggesting that the Court slice and dice. But the point I'm making is that although he's arguing that there's a need for it in these narrow types of cases, this is not such a case. And, in fact, a vast run of these types of cases don't fit within these narrow confines where I don't think he even needs a right. He brought up the point that you're looking at both potentially damage remedy and injunctive relief. Do you think there's a distinction there as to what private right there might be and whether it's analyzed differently? For example, let's take damages off the table and say they would have a right to go in for an injunction if they were being evicted without the federal notice. I don't think there's either remedy would be appropriate, and I'm hard-pressed to really draw distinctions between them. I don't think there's any sort of federal right of action for any sort of remedy. As far as injunctions go, it seems to me quite clear that Congress did not intend to essentially override younger and grant federal courts the power to enjoin ongoing state court eviction proceedings. I don't think that's the right outcome. As far as money damages go, number one, those are simply unnecessary to vindicate whatever protections Congress intended to grant. In other words, the protections Congress intended to grant, namely this notice provision, is something that would be asserted and can be fully vindicated in the defense of posture in the context of state court proceedings. In fact, a good analog would be the federal rules, which treat lack of notice as an affirmative defense. In other words, if you don't get properly served with a complaint, you don't have notice. That's a defense. Notice is typically treated as a defense, and there is no reason to think that when Congress created this notice requirement that they somehow intended it to be wielded not just as a shield but also as a sword. That makes absolutely no sense. And whatever protections they were trying to give tenants are fully vindicated in the defense of posture in these state court proceedings. And that's precisely the way that they are currently being applied. State courts out there are treating a violation of the 90-day notice provision as a defense to state court eviction proceedings. And in fact, many courts have reversed eviction orders based on the failure to comply with the 90-day notice provision. So the statute is working. Yeah, but when you think of other statutes where there's no private right of action and there's also no federal enforcement, because in many of the cases that we see, we might determine, well, there's no private right of action, but in fact there's this federal regulatory construct, and we're going to go after one or the other actors, but maybe the person who's got a potential right to bring it isn't really involved. Here we have what I guess has been characterized as a self-enforcing statute. Are there other examples that you think of that are parallel to this where you don't really, you know, HUD washes its hands, the federal government washes its hands, but it lays a statute on the table? Well, at the moment I'm not aware of an exact analog, but I suppose I'm not quite sure I agree with Your Honor's point that the federal government washes its hands. In other words, HUD has issued guidance and advisories about how banks, lenders, property owners need to comply. So I suppose I would slightly disagree with Your Honor's premise that the federal government has basically created this quote-unquote right and then stepped back. It's not an enforceable regulatory, but they do have bank guidance. Right. HUD is obviously extremely aware of this requirement and, in fact, has published orders, guidance, guidelines, those sorts of things, giving lenders and banks guidance on how actually to apply. The bank would also, I assume, be concerned about actions. Assuming it's a bank involved, it's not always going to be a bank, but it would be concerned about federal and possibly state regulatory action being taken against the bank for failure to follow the requirements of the 90-day notice. Is that a fair assumption? Well, I certainly think the fact that HUD has now weighed in is a fair assumption that at some point HUD might say we have a more aggressive role to play here. Obviously, that would raise separate issues, but nonetheless, I think it's very fair to say that this is very much on the federal government's radar screen, that they are aware of the statute, they're interpreting the statute, they're promulgating guidance to ensure compliance with the statute. So I do think that, in addition to the state remedy, you also do have that federal overlay that's out there. Normally, of course, banking regulation is the province, at least in federal banks of the federal government. I take it there's not any kind of cross-reference between HUD guidelines to lenders and banks and the normal banking regulatory structure. I'm not aware of that, Your Honor. I'm not aware of that. I think one other point to make that may be implicit in our proceeding discussion is that accepting the plaintiff's view, I think, would put district courts in an untenable position because in every case, or virtually every case, in which a theoretical private right of action were asserted in federal court, there would be an ongoing concurrent state court eviction proceeding, almost by definition. In other words, someone files a state court unlawful tainter proceeding. At the same moment or shortly thereafter, the plaintiff comes into federal court and files a lawsuit for violation of the PTFA rights. At that point, the district court is going to be faced with the exact same situation that the court in this case was presented with, namely, what is my role vis-a-vis this ongoing state proceeding? Are there younger issues that are going to complicate the matter? There are going to be removal issues. In this case, of course, there were multiple attempts to remove the state eviction proceeding into federal court, and so you're going to be placing federal district courts in this extremely complex and unworkable situation where they're going to have to navigate their relative jurisdiction vis-a-vis the state court's jurisdiction. And I think just overall it would be a very impractical, to say the least, absolutely unworkable system in practice to have two concurrent litigations going on over the lawfulness of a particular eviction that can't be what Congress intended. Mr. Trickett mentioned there was legislative history involved that he feels argues in favor of a private right of action. Are you aware of anything in history? We know what Justice Scalia thinks about legislative history, but for a moment, let's just entertain the concept. Is there anything that you're aware of in any reports by either the House or the Senate-relevant committees or anything else that you think might be a legitimate legislative history touchstone that would help your opponent? There's absolutely nothing in the legislative history that remotely helps their position. Okay. Nothing. There's no mention of private rights of action. The discussion focuses entirely on what we've been talking about, namely these eviction proceedings where the tenant allegedly wasn't given adequate notice. There's nothing remotely that supports their position. And, of course, this Court and the Supreme Court have said that in this context where you have a legislative record with no mention of private rights of action or any suggestion or hint that they were looking to create one, particularly in a context like this where historically these are rights that are vindicated under state law, courts need to be exceedingly cautious about recognizing implied rights of action. There's nothing in the legislative history that remotely supports their position. I gather you also feel that in the four factors under the court versus ash test that this statute doesn't meet any of those. That's exactly right, Your Honor. I think that certainly the intent factor we've been discussing, I think the point about whether this is a cause of action that typically is adjudicated under state law factor clearly cuts in our favor. And even, frankly, the purpose, Kong, I think cuts in our favor because the purpose of this statute, of course, was to ensure that tenants were given adequate notice before evictions occur. And that purpose is fully vindicated by making this a defense of state law. It's kind of equivalent to the Warren Act, is it not? Something similar. I mean, it's obvious. One's employment, one is a tenancy situation. But you want to be sure people have notice. They can make plans. They know what's coming. That's exactly right, Your Honor. And notice, of course, historically is a defense. It's not an affirmative cause of action. It's a defense to another proceeding against you or someone who's trying to obtain relief against you. You say, I didn't get adequate notice. That's a defense sufficient to defeat the claim against you. That's historically how notice has been considered. And there's absolutely no reason to suspect congressmen anything different in this situation. There's a Ninth Circuit case referenced in the briefing in your argument, the Helfer case. And the language in that case says to the effect, for there's no enforcement mechanism that's explicitly provided by congress, then it's appropriate to infer that congress intended a private right of action. How do you square that language with your position? Well, I think it's easily squared in that this right to notice is enforceable in the sense that it is a defense. And it can be a trump card in a defense to an eviction proceeding. I think what the Helfer court was getting at is they said it's unlikely that congress would have wanted to put words, provisions, rights in a statute and then effectively render a dead letter by denying private parties or the government any ability to actually give meaning to those words or to obtain relief or to deny relief or otherwise give those words significance in the real world. That's what the Helfer court was concerned about. And, of course, here, this is a defense. That canon is asserted throughout the country on a regular basis. So I think this is miles away from what the Helfer court was concerned about. It seems to me that lack of enforcement is an issue. I mean, you mentioned the Warren Act and you agreed with Judge Smith. Well, it's like that. But actually, my recollection, I may be wrong, but there is a private right of action vis-a-vis the Warren Act both in terms of federal law and in many, what I'll call many Warren Act state laws. So that's a little bit different, obviously. But that's in the statute. But that's in the statute, so it's not a question of. It's express. Well, right. So it's not an analog here. You can't say, well, it's like Warren Act and you get the notice. They gave it to you. But here it is kind of self-executing. In other words, nothing happens and you might have different states, as he suggests, some rejecting, some accepting the limitations of this act. So then you don't have any kind of uniform enforcement, right? Well, I guess I'm not aware of what counsel is talking about when he says they're rejecting the act. In other words, certainly there are cases where a tenant says, I wasn't given my notice and the court rejects that claim on the merits. But obviously that doesn't mean they're ignoring the act. They just weren't. We can ask him. My understanding of his suggestion was that they're not really taking cognizance of the act as opposed to interpreting it and rejecting it. But we can ask him the question. Well, where would you go for relief on that? Where would you go for? Where would you go for relief in a situation where the person asserts that they have a lease and the state court grants the summary proceedings contrary to the assertion there's a lease that is protected under the statute? Where would recourse be in the federal courts? I'm not sure it would be, Your Honor. My sense is that the recourse would be the same as it would be in any other state court dispute where a state court, trial court, for example, refuses to give credence to your constitutional rights, for example. I think in that situation the recourse is up to the state court system. You go through the state court system asserting that it was a federal provision. That's right. That's right. And I would also just add as a postscript, Your Honor, of course, there's no evidence of this. I mean, certainly nothing in the briefs and not to my knowledge of this occurring. No, no. But there is a revenue. Oh, absolutely. The avenue is just straight state appeals. As it would be with any other federal constitutional issue that's litigated in the state courts. Okay. All right. Unless there are further questions. I think not. Thank you. Thank you. I'll give you a minute for rebuttal. Just a quick question on that. I had reserved five minutes that I use up all of the time. You use way, way, way into your time. Okay. Red light. One minute. Can I just ask you one quick question? Sure. What are the states in the United States that allow someone who is a tenant on a property where a lender has foreclosed to go in without process and throw people in the street? When you say process. Legal process. Yes. The one that I'm aware of because the amici in their brief cite to it is Florida. But I have not done the survey of the other states in terms of what remedies are available. If you just literally go in there and somebody says, I'm not leaving and you violently throw out their stuff, that's okay. What you can do is you can, without having to go through the courts, get a sheriff to evict them. Well, that's process in a sense. There's a Florida state law presumably that allows you to get the sheriff who is himself or herself bound by certain rules to effectuate. But to effectuate what? Is there a writ? Some kind of self-executing writ or what? I'm not exactly sure how it works, Your Honor. But my question would be how would the tenant in that case where the sheriff is coming and taking possession of the property assert their rights under the PTA Act? Well, the same answer that was given just a minute ago through the state process. I find it startling that there would be any state that would permit an owner to bodily remove a tenant and the tenant's things without process of law. I just don't. I'm going to look up this Florida deal. And, Your Honor, I'm not saying that there's no process of law. I was making a distinction between initiating an action. In Florida, you don't have to initiate an action. It doesn't need to be an action. But you've got to have, when I say process or process of law, I mean where you have the apparatus of the state, and that would include a sheriff, that under some mechanism of law acts as the removing agent there. You just can't have a bunch of thugs go in there and move these people out, throw them in the street. I can't imagine that. And I'm asking, am I wrong? Your Honor, I'm not aware of any state in which even coming close to hiring a bunch of thugs, that that is something that is available to successors in interest. I'm not implying that at all. I mean to use up time, but I'm sure our learned presiding judge will do justice by you. We'll give you a flexibility here. Thank you, Your Honor. Just to take through really quickly on the law here, which we've been talking a lot about traditionally relegated and practically where might someone have a remedy. The law here, if you look at the IPRA cases, is if there are explicit rights created in a federal statute and there's no other enforcement mechanism, in every single case since Touche Ross, the courts have found a private right of action. And in every single case where there are no explicit rights, they have not. So this should be an easy case on that ground alone. Second, there was the question about the presiding judge asked the question about whether there's an analog and whether there's a statute where there is no enforcement mechanism. And if you look at Transamerica, it really makes this distinction. Transamerica is a beautiful case because there are two statutes at issue. And in one, the court found a private right of action and the other didn't. And so you can really see how the Supreme Court looked at these two statutes. One created rights. One only regulated. The one that created rights, though, what it did is it allowed plaintiffs to void a contract. And what the court said is while this will often be used as a defense, solely using it as a defense will not allow plaintiffs to have the full rights afforded by Congress. And the rights here, are they not notice rights? And more. What else? And when they have a lease, they're entitled to continue to live under the lease without any kind of raising rent or changing the arrangement for payment of utilities or anything else. They're allowed to stay under the terms of the existing lease that they had through the term of their lease. And that's the kind of right, like this case, that's the kind of right that needs to be enforceable. Why wouldn't that be effectively played out in an eviction action? In other words, one, I didn't get enough notice. And two, even if you give me the right of notice, I have a right under the federal law to stay. So therefore, no eviction or no eviction until X date. In an eviction action, let's say the defendant in an eviction action raised it as a defense. And let's say the state court agreed and dismissed the eviction action. And then let's say the bank shut off their utilities, not in California. Or let's say that they raised rent or did a number of other things that would be available to them under the state common law. Under what my client would like to be able to do, because in this case... And you don't pay their rent. Pardon? And if they come after you, then you have this defense again. So that's one scenario, not paying the rent. But there are things they can affirmatively do to you where you do not get the benefit of your lease. But if you go and go bring an action to enforce the terms of your lease under state common law, you will not be afforded the rights under the PTFA. What do you do in a bankruptcy situation where you're a retail merchant and the bankruptcy statute allows the landlord to terminate after a year? What happens then? In terms of whether or not the PTFA... Right. That's a very good question, Your Honor. And I don't know how courts would reconcile that. I mean, there would be a statutory concern. I don't mind that we get ourselves into a real thicket. That's just one of many possible scenarios. And the situation that you have before us here, which is the case in controversy, brings none of these things before us. There's even a question of whether there's a bona fide situation. We'll just assume for our discussion that there is. All the parade of horribles that you bring are not before us, are they? Well, there's one thing that is before us, Your Honor, and that is that U.S. Bank dismissed their unlawful detainer action, but they dismissed it without prejudice, and then they brought it again. No, I get that. I understand that part. But what I'm saying is you don't have somebody being thrown out on the street. This thing is just the fact that you're here, the 90 days is a distant memory. It's way back there. And certainly in California, you can't get a hearing for 90 days, let alone get a disposition on anything, including an unlawful detainer. So the reality is we have to deal with the facts as we're dealing with them here, and I suspect that the situation that you postulate, like in Florida and so on, I'm not sure we even get to that because that's not before us. Your Honor, just to respond to that, I understand what the Court is saying about the parade of horribles, but this discussion of where they might go, that's not part of either the court viash or tushras. And that's why I wanted to get back to the rights-creating language, because while the Court can be concerned about how this is going to play out, what has happened thus far across the country, when my opponent discusses 46 cases two days ago, I had to go through and look at all 46 cases. And what I found is that only 15 of them even addressed whether or not there's a private right of action, and only two of them, excuse me, only one of them actually engaged in an independent analysis of the court viash factors, and that's Nativi. And then what happened is all the other district courts just followed Nativi, and it's kind of, you start to have deja vu because you see... We see that pretty often. They just cut and pasted, not just the citations, but long discussions. And so, I mean, you sweep across. The other 31 cases arose in the context of removal of an unlawful detainer action, and what the Court said is, well-pleaded complaint rule, you know, it's a defense, and you're asserting it as a defense. You can't assert a counterclaim in an unlawful detainer action. So since it's only a defense in this context, back to state court with you. And they don't even address court viash. So when we see these 46 cases, and there's actually more, what we're not seeing is a bunch of district courts all over the country engaging in the court viash analysis, which is what this court and what all of the jurisprudence leading up to today says that the court needs to do. In light of 2P-RUS. Yet you say that the Supreme Court in the one case you mentioned where they have the voided contract under one scenario and a different one elsewhere did just that. It kind of looked at the factors and how it would apply and how it works practically. And as a court of appeals, we're in a little different situation than the district court is because whatever we do here, if we were to adopt your approach, at least unless we were overruled by an en banc court or the Supreme Court, this would be governing law in nine western states and the Mariana Islands and Guam with very real practical implications. So we do have to think through how this works. There's no question that it's weighty. But, Your Honor, what I would say to that is that's why it's so important that you do. Because this is happening all the time. It's happening all the time that banks are not following the PTFA. And the district courts across the country have essentially followed Nativi and they've punted on the issue. And this is one of those rare situations where the Ninth Circuit has an opportunity to lead. No other circuit court in the United States has ruled on this issue yet. And the Ninth Circuit is often cast in the position where a bunch of other courts have already decided something and then the Ninth Circuit decides that it doesn't agree with that persuasive authority. But in this case, what the Ninth Circuit has an opportunity to do is not just for those nine states but for the country as a whole to lead and to, for the first time, look at the statute under Court v. Ash and Touche. Thank you. We have your arguments well in mind. I'd like to thank both counsel for your very nice argument this morning. The case just argued of Logan v. U.S. Bank is submitted and we're adjourned for the morning.
judges: Bell, McKeown, Smith